## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| MOISES BANUELOS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-20-CV-65-DB |
| | § | |
| ALORICA, INC., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

On this day, the Court considered Defendant Alorica, Inc.'s ("Defendant") "Motion to Compel Arbitration and Stay Proceedings" ("Motion") filed on May 4, 2020.   ECF No. 15. On May 19, 2020, Plaintiff Moises Banuelos ("Plaintiff") filed a Response.   ECF No. 17.   On May 29, 2020, Defendant filed a Reply.   ECF No. 20.   Upon due consideration, the Court grants the Defendant's Motion to Compel.

## BACKGROUND

This is an employment lawsuit involving claims of disability discrimination and retaliation.   Mot. 1, ECF No. 15.   Defendant formerly employed Plaintiff as a customer service representative.   *Id.*   Plaintiff's signature appears on a hard copy and electronic Agreement to Arbitrate ("the Arbitration Agreement") executed after Plaintiff accepted an offer of employment with Defendant on March 1, 2017.   *Id.*; Pl.'s hard copy Arb. Agr. 3, ECF No. 15-3; Pl.'s Elec. Arb. Agr. 3, ECF No. 15-4.

A former Talent Acquisition Assistant for Defendant, Jacqueline Perez ("Perez"), provided onboarding sessions for new hires, like Plaintiff.   *See* Perez Decl. ¶¶ 2–3, ECF No. 15-7.   Perez provided hard copy documents to new hires, including the Arbitration Agreement, explained how to complete the documents, and remained available to answer questions as new

hires reviewed and executed the documents.   *Id.* ¶ 4.   Then she reviewed new hires' documents to ensure proper completion.   *Id.* ¶ 5.

On March 1, 2017, the date of Plaintiff's signature, Perez personally signed the hard copy of Plaintiff's Arbitration Agreement on behalf of Defendant.   Pl.'s hard copy Arb. Agr. 2–3, ECF No. 15-3.   Paperwork, like the Arbitration Agreement, for new hires was placed in the employee's file and kept onsite in a locked file room.   Perez Decl. ¶ 5, ECF No. 15-7.   Perez describes Plaintiff's signature on the Arbitration Agreement as matching his signature on other onboarding documents.   *Id.* ¶ 6.

In addition to completing the onboarding documentation manually, potential new hires are given access to a computer to continue the onboarding process using Taleo, Defendant's recruitment and talent management system.   *Id.* ¶ 7.   All prospective new hires were required to create a unique Taleo username and password, which was not to be shared with any other employee.   *Id.*   The Taleo system is designed to permit candidates to enter electronic signatures using their passwords, subject to several levels of authentication and security measures.   *See* Gangi Decl. ¶¶ 6–8, ECF No. 15-2.   The Taleo system has built-in requirements to ensure the candidate creates a strong password, including the requirement that the password contain capital letters, numbers, and special characters.   Calsetta Decl. ¶ 3, ECF No. 15-12.

To ensure that all documents were properly completed and signed, the Taleo setup was such that a candidate, including Plaintiff, could not progress from one onboarding document to the next without completing each document and inserting a signature where required.   Perez Decl. ¶ 8, ECF No. 15-7.   The candidate must review and electronically sign every document on the list for the system to denote that the process is 100% complete.   Calsetta Decl. ¶ 4, ECF No. 15-12.   There is no way to skip electronically signing a document in the process and achieve the

100% complete status.  *Id.*  Taleo creates a log of the onboarding activities conducted on its system.  Gangi Decl. ¶ 5, ECF No. 15-2; Pl.'s Taleo Log, ECF No. 15-5.

According to the entries logged in Plaintiff's Taleo onboarding history, Plaintiff accessed the Taleo system on March 1, 2017, and he executed the Arbitration Agreement with his electronic signature, which required entering his unique Taleo password.  Gangi Decl. ¶¶ 5–6, ECF No. 15-2 (citing Pl.'s Taleo Log 4, ECF No. 15-5).  Without Plaintiff's signed Arbitration Agreement, Defendant would not have hired him.  *Id.* ¶ 7.  Defendant's Taleo system does not allow anyone operating the system to switch a candidate's state from "applicant" to "employee" without a signed Arbitration Agreement.  *Id.*

The Arbitration Agreement purports to form a binding contractual commitment for both parties to submit disputes arising out of or relating to Plaintiff's employment with Defendant, including termination, to binding arbitration.  Pl.'s hard copy Arb. Agr. 2, ECF No. 15-3. Furthermore, Plaintiff and Defendant "voluntarily and irrevocably waive any and all rights to have any such dispute decided in court or by a jury."  *Id.*

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to contracts affecting commerce and requires courts to enforce a written agreement to arbitrate contained in any such contract.  *See* 9 U.S.C. § 2.   Under the FAA, a court cannot compel arbitration unless: (1) a valid agreement to arbitrate between the parties exists and (2) the plaintiff's claims fall within the substantive scope of the valid arbitration agreement.  *See, e.g., Pennzoil Expl. & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998).

Because the second element, scope, is not at issue, the Court will focus on the first, validity.  Pl.'s Resp. 1, ECF No. 17.   An agreement to arbitrate is valid if it meets the

3

requirements of the general contract law of the state.   *JP Morgan Chase & Co. v. Conegie Ex Rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) ("Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate.") (citing *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)); *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011).   Under Texas law, "[a] strong presumption in favor of arbitration attaches 'only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.'"   *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex. App.—El Paso 2014, no pet.) (quoting *J.M. Davidson, Inc., v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

In analyzing this issue, the Court must keep in mind that the FAA embodies "a liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991), and resolve any ambiguity in favor of arbitration.   *See, e.g., FedMet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999).   This strong federal policy in favor of arbitration applies in the employment context.   *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122–23 (2001).

## ANALYSIS

Defendant claims that the Arbitration Agreement is valid because it manifests both parties' consent to arbitrate, as demonstrated by Plaintiff's signature on the hard copy and electronic version.   Mot. 7, ECF No. 15.

Plaintiff counters that the Arbitration Agreement is not valid because Plaintiff's signature is a forgery.   Pl.'s Resp. 1, ECF No. 17.   Plaintiff claims he did not sign either the hard copy or electronic version of the Arbitration Agreement, and was not present in Defendant's El Paso West facility on the date of his alleged signatures.   *Id.* at 2–3 (citing Pl.'s Aff. 1, ECF No. 17-1).   Furthermore, he did not receive notice of the electronic Arbitration Agreement.   Pl.'s

Aff. 2, ECF No. 17-1.   Plaintiff argues that his affidavit denying notice alone is enough to defeat

Defendant's alleged proof of notice.   Pl.'s Resp. 3–4, ECF No. 17 (citing *Kmart Stores of Texas,*

*LLC v. Ramirez*, 510 S.W.3d 559, 569–70 (Tex. App.—El Paso 2016, pet. denied)).   Finally,

Plaintiff "objects" to Defendant's proffer of the electronic Arbitration Agreement because

Defendant did not produce the original document, and some documents contain hearsay and violate

the best evidence rule.   *Id.* at 4–5 (citing *Llamas v. State*, 270 S.W.3d 274, 281 (Tex. App.—

Amarillo 2008, no pet.); *Rodgers v. State*, 111 S.W.3d 236, 243 (Tex. App.—Texarkana 2003, no

pet.); *Ballard v. State*, 23 S.W.3d 178, 181 (Tex. App.—Waco 2000, no pet.)).

   In its Reply, Defendant argues that Plaintiff cannot rely on affidavit evidence alone

to disavow his signature on the Arbitration Agreement as a forgery.   Def.'s Reply 2–3, ECF No.

20.   Plaintiff fails to produce "some evidence" substantiating his claim of forgery as the Fifth

Circuit requires.   *Id.* at 2 (citing *T&R Enters., Inc. v. Contl. Grain Co.*, 613 F.2d 1272, 1278 (5th

Cir. 1980); *Dillard v. Merrill Lynch*, 961 F.2d 1148, 1154 (5th Cir. 1992)).   Finally, Defendant

argues that Plaintiff's objections to the admissibility of its evidence are meritless.   *Id.* at 4.   Even

if the Court held that Plaintiff raises a fact issue regarding his signature, ultimately the Court agrees

with the Defendant that arbitration should be compelled.

## A. Plaintiff's Objections to the Admissibility of Defendant's Evidence are Meritless.

   Plaintiff objects to Defendant's submission of the hard copy and electronic

Arbitration Agreement, as well as his Taleo Onboarding Log ("log").   Pl.'s Resp. 4–5, ECF No.

17.   Because the Court agrees with Defendant that Plaintiff's objections are meritless, the Court

may consider the evidence in granting Defendant's Motion.

### 1. Defendant properly submitted original documents and complied with the best evidence rule.

   First, Plaintiff's objection that Defendant failed to produce original copies of the

Arbitration Agreement fails because an "original" of electronically stored information includes any printout that accurately reflects the contents. Fed. R. Evid. 1001(d). Likewise, Plaintiff's objection that the printout of his log violates the best evidence rule fails for the same reason—a printout is considered an original. *Id.; see also Rosales v. Coca-Cola Sw. Bevs. LLC*, No. EP-18-CV-361-PRM, 2019 U.S. Dist. LEXIS 57786, at *12 (W.D. Tex. Apr. 3, 2019).

### 2. Defendant's log satisfies the business records exception to the hearsay rule.

Next, Plaintiff claims that the printout of his log cannot be authenticated by Defendant's employees, Gangi, Perez, and Calsetta, because it contains hearsay and Defendant's employees fail to establish that it falls within the business records exception. Pl.'s Resp. 5–6, ECF No. 17. Specifically, Plaintiff takes issues with Defendant's failure to assert that the log was "made at or near the time by—or from information transmitted by—someone with knowledge," and therefore the log cannot be a record of a regularly conducted business activity. *Id.* at 5 (quoting Fed. R. Evid. 803(6)(A)) (internal quotations omitted).

"Hearsay" is an out of court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Hearsay is not admissible unless an exception to the hearsay rule applies. *See* Fed. R. Evid. 802. One exception to the hearsay rule is the "business records exception," which states that a record with hearsay is admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902 (11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the

method or circumstances of preparation indicate a lack of
trustworthiness.

Fed. R. Evid. 803(6).

A fellow Judge in this Courthouse recently decided a similar issue where a plaintiff,
like the one here, took issue with element (A) because the proponent of the record did not
specifically claim that it "was made at or near the time by . . . someone with knowledge." *See*
*Rosales*, No. EP-18-CV-361-PRM, 2019 U.S. Dist. LEXIS 57786, at *9. But like in a motion
for summary judgment, evidence attached to a motion to compel is held to a more lenient standard
and "is not required to be in a format that would be admissible at trial." *Id.* at *9. Rather, the
party offering the record must be able to prove the underlying facts at trial with admissible
evidence. *Id.* at *10. Thus, Judge Martinez applied the "more lenient" standard and determined
that a declarant who was knowledgeable about how the record was made, described the method by
which the information was recorded, and also testified that she reviewed the plaintiff's personnel
records, was enough to establish the admissibility of the record. *Id.* at *10–11.

Here Gangi, Perez, and Calsetta all are knowledgeable about how the log was made,
and the method of recording the information on Taleo. *See supra* 2–3; Gangi Decl. ¶¶ 2, 7, ECF
No. 15-2; Perez Decl. ¶¶ 7–9, ECF No. 15-7; Calsetta Decl. ¶¶ 2–7, ECF No. 15-12. And they
all reviewed the Plaintiff's personnel records. Gangi Decl. ¶ 4, ECF No. 15-2; Perez Decl. ¶ 6,
ECF No. 15-7; Calsetta Decl. ¶ 6, ECF No. 15-12. Given the more lenient standard, this is
sufficient foundation for admissibility even if the employees do not specifically state that "the
record was made at or near the time by-or from information transmitted by, someone with
knowledge." Fed. R. Evid. 803(6)(A); *see Rosales*, No. EP-18-CV-361-PRM, 2019 U.S. Dist.
LEXIS 57786, at *10–11. Because Plaintiff's objections fail to challenge the admissibility of
any of Defendant's evidence, the Court considers the hard copy and electronic Arbitration

Agreement, as well as the log, in granting Defendant's Motion.

## B. Defendant Satisfies Its Burden of Showing that a Valid Arbitration Agreement Exists.

As the party seeking to compel arbitration, Defendant has the initial burden of establishing that a valid arbitration agreement exists. *Smith*, 445 S.W.3d at 812. The threshold issue is whether the parties agreed to arbitrate. *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992). Under Texas law, an agreement to arbitrate is enforceable if the employee received notice of the arbitration policy and accepted it. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006). Here, because Plaintiff received notice of the Arbitration Agreement and accepted it, it is valid and enforceable.

### 1. Plaintiff received notice of the Arbitration Agreement.

When determining whether an employee received notice of a binding arbitration agreement, the Texas Supreme Court does "not confine that 'notice analysis' to the underlying agreement, but to all communications between the employer and employee." *In re Dallas*, 196 S.W.3d at 162. In *In re Dallas*, despite the employer lacking a signed arbitration agreement, the Texas Supreme Court deemed notice sufficient based on a six-page summary of the arbitration agreement and accompanying, signed acknowledgment form. 196 S.W.3d at 162–63. Here we have a signed hard copy Arbitration Agreement itself, thus notice is demonstrated. Pl.'s hard copy Arb. Agr. 2, ECF No. 15-3. Moreover, additional communications between Defendant's employees, Perez, Gangi, Calsetta, and Plaintiff, as well as the extensive Taleo onboarding process with its security measures, demonstrate that notice was given. *See supra* 2–3.

In order to disavow a signature on an Arbitration Agreement, an employee "bear[s] the initial burden of production to create a validity fact issue." *Prevost v. Burns Int'l Sec. Servs. Corp.*, 126 F. Supp. 2d 439, 442 (S.D. Tex. 2000). Some evidence must be produced to

substantiate the claim of forgery.  *See id.* (citing *Almacenes Fernandez, S. A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945)).   For example, in *Prevost*, the employee submitted evidence that his signature on the arbitration agreement was arguably distinct from his signature on another onboarding document, which carried the employee's burden to create a validity fact issue.   *Id.* at 441–42.

In contrast to the employee in *Prevost*, Plaintiff does not introduce any evidence of distinct signatures, nor does he provide substantiating evidence that he was in a different location than Defendant's offices on March 1, 2017.  *See generally*, Resp., ECF No. 17.   Indeed, Defendant presents evidence that Plaintiff's signature on his Arbitration Agreement matched his signature on other onboarding documents.   Perez Decl. ¶ 5, ECF No. 15-7.   Thus, Plaintiff's disavowal of his signature and claim that he was not present in Defendant's offices on March 1, 2017, without any corroborating evidence, is insufficient to create a fact issue regarding his notice of the Arbitration Agreement.

Even if Plaintiff's affidavit alone creates a fact issue, the Court would be within its discretion as fact finder to credit Defendant's version of the facts over Plaintiffs.  *See Kmart Stores*, 510 S.W.3d at 569–70.   Plaintiff overstates the persuasive authority and analysis in *Kmart Stores*: his affidavit denying notice cannot summarily defeat Defendant's alleged proof of notice, rather the Texas Eighth Court of Appeals held that it merely suffices to raise a fact issue as to an *electronic* arbitration agreement.   Pl.'s Resp. 3–4, ECF No. 17 (citing *id.*, emphasis added). Indeed, the Texas Eighth Court of Appeals pointed out that an oral denial only undermines electronic arbitration agreements where an employer "gamble[s]" and "foregoes an employee signature."  *See Kmart Stores*, 510 S.W.3d at 570.   As discussed above, Defendant did not forego a hard copy Arbitration Agreement with Plaintiff's signature, which alone shows that the

9

notice requirement was met.   *Supra* 6–7.   But because the Court credits Defendant's version of facts over Plaintiff's, the electronic Arbitration Agreement is also valid and unequivocally provides notice.   *See supra* 2–3.

### 2. Plaintiff accepted the Arbitration Agreement.

An employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law.   *In re Dallas*, 196 S.W.3d at 163.   Plaintiff's signed Arbitration Agreement indicates that all disputes arising out of his employment must be resolved by binding arbitration.   Pl.'s hard copy Arb. Agr. 2, ECF No. 15-3; Pl.'s Elec. Arb. Agr. 1, ECF No. 15-4.   His signature is dated March 1, 2017, the same date his employment commenced.   Pl.'s hard copy Arb. Agr. 2–3, ECF No. 15-3; Pl.'s Elec. Arb. Agr. 2, ECF No. 15-4.   Therefore, by signing the Arbitration Agreement and commencing his employment, Plaintiff accepted the agreement as a matter of law.   The Arbitration Agreement is valid and enforceable.

### CONCLUSION

Because Plaintiff's objections are meritless and both the hard copy and electronic version of the Arbitration Agreement are valid and enforceable, Defendant's Motion shall be granted.

**IT IS HEREBY ORDERED** that Defendant Alorica, Inc.'s "Motion to Compel Arbitration and Stay Proceedings" is **GRANTED**.

**IT IS FURTHER ORDERED** that the Parties are **COMPELLED TO ARBITRATION**.

**IT IS FURTHER ORDERED** that the above-captioned case is **STAYED PENDING ARBITRATION**.

IT IS FURTHER ORDERED that the Parties FILE a STATUS REPORT by October 16, 2020, informing the Court of the progress or outcome of the arbitration.

IT IS FINALLY ORDERED that the Parties FILE a Final ADR Report in accordance with Local Court Rule CV-88(i) on the result of the arbitration within ten days of the final disposition of the arbitration.

SIGNED this _20th_ day of July 2020.


THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE

11